**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Lori Marie Updegraff, Respondent,

v.

David Blaine Updegraff, Appellant.

Appellate Case No. 2024-000951

———————

Appeal From Cherokee County
Matthew P. Turner, Family Court Judge,

———————

Unpublished Opinion No. 2026-UP-387
Heard December 10, 2025 – Filed July 22, 2026

———————

**AFFIRMED AS MODIFIED**

———————

Max Thomas Hyde, Jr., of Hyde Law Firm, P.A. of Spartanburg, and Sarah P. Spruill and Reid T. Sherard, both of Haynsworth Sinkler Boyd, PA, of Greenville, all for Appellant.

Richard H. Rhodes and William Hardwick Rhodes, of Burts Turner & Rhodes, and Allison Peters Dunham, all of Spartanburg, for Respondent.

———————

**PER CURIAM:** David Blaine Updegraff (Husband) appeals the family court's final order of divorce, arguing the family court erred in (1) awarding permanent

periodic alimony to Lori Marie Updegraff (Wife) because Husband plans to retire at age sixty-five; (2) ordering the marital home, pastureland, and rental property to be sold as opposed to divided in kind; (3) ordering Wife to divide her interest in an undeveloped parcel with Husband; and (4) applying an incorrect valuation of Husband's retirement accounts. Husband additionally requests that this court modify the family court's order to reflect any changes this court makes. We affirm as modified.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married on January 29, 1999.[1] Wife initiated this action for separate maintenance on December 21, 2021.[2] By the time of the 2023 trial, the parties had agreed on all issues except alimony, equitable distribution of real and personal property, and attorney's fees. At trial, the primary contested issues were the valuation and ownership of the marital residence on Battleground Road (the Marital Home) and adjoining pastureland on McGinnis Road (the Pastureland), as well as an undeveloped parcel located on Riveroak Road (the Riveroak Parcel). The parties requested an equal 50/50 division of the marital estate. The parties further stipulated values for the Pastureland ($70,000) and a rental property ($159,500). However, with respect to the Marital Home, Wife presented a value of $750,000, and Husband presented a value of $700,000 via competing experts. The value of the Riveroak Parcel was also contested.

The parties also disagreed as to the value of Husband's retirement accounts. Husband's asset addendum showed a $296,326.03 value for a pension plan and a net equity value of $1,361,921.58 in 401(k) accounts with Charles Schwab.[3] His valuation of the Schwab accounts excluded the non-marital portions of those accounts, which he determined were $20,000 in premarital contributions and $76,544.24 in contributions after the date of filing. Wife, through an expert, valued Husband's pension plan at $828,288 and Husband's two Schwab 401(k) accounts at $1,642,738.07 for the account ending in 5193 and $126,667.85 for the account ending in 0896, or $1,769,405.92 together. The parties agreed that the

---

[1] The parties are the parents of one child, who was emancipated as of the time of filing.
[2] The court ultimately granted the parties a divorce on the ground of continuous separation for more than one year.
[3] In his valuation, Husband combined the Schwab accounts and did not delineate the value of each.

marital portion of the accounts should be evenly split through a qualified domestic relations order (QDRO).

The family court ultimately issued an order accepting the parties' stipulated values for the Pastureland and rental property, assigning values of $750,000 to the Marital Home, $296,326.03 for the pension, and $1,769,405.92 for the Schwab accounts as of the date of filing. In dividing Husband's retirement accounts, the family court found:

> Plaintiff shall be entitled to 50% of the marital portion (date of marriage through date of filing) of Defendant's retirement and pension accounts as of the date of filing, subject to any passive gains and/or losses. The accounts shall be split pursuant to a [QDRO]. Each party shall pay one-half (1/2) the cost of the preparation of the QDRO(s). Both parties shall sign any necessary documentation to accomplish the division of these accounts.

The family court ordered that all marital real property be sold except the Riveroak Parcel. The Riveroak Parcel is owned by FallinUp, LLC, which is owned in equal shares by Wife and her friend Dea Fallin.[4] Husband and Wife assigned substantially different values to the Riveroak Parcel: $660,000 and $357,000 respectively. Because neither FallinUp, LLC, nor Dea Fallin were made parties to the action, the family court could not order the sale of the Riveroak Parcel. Therefore, the family court ordered Wife to transfer half of her one-half interest in the parcel to Husband.

On the issue of alimony, the family court, after completing the mandatory examination of the statutory factors, determined that "[Wife] is entitled to permanent periodic alimony in the amount of $2,500.00 per month."[5] Finally, the family court awarded Wife $15,000 in attorney's fees, primarily on the basis that Husband was in a better position to pay. Both parties moved to alter or amend.

---

[4] Dea Fallin testified there are no current plans for the Riveroak Parcel, but Husband testified he believed there were once plans to open a beer garden.
[5] *See* S.C. Code Ann. § 20-3-130(C) (2014) (listing the factors the family court must consider in awarding alimony).

Husband argued the following grounds in his motion: (1) the alimony award was "inappropriate," should be reduced, should be for a term rather than permanent due to his required retirement at age sixty-five, or, alternatively, should be modified to reflect that the award may be modified upon his retirement; (2) the family court should make an in-kind distribution of the parties' real property and award the Marital Home and Pastureland to Husband (based on his testimony about his desire to keep and raise horses on the property to maintain his way of life) or reduce the values to reflect the horse use of the property and give him credit for payments made on a home equity line of credit and all other reductions in principal as to the Marital Home, Pastureland, and rental property after the date of filing; (3) the family court should clarify as to each party's respective special interest in, and the family court's proposed division of, the Riveroak Parcel; (4) the family court's valuation of Husband's Schwab accounts was not reflective of the value of the marital portion of those accounts; (5) the family court erred in its award of attorney's fees; and (6) the order should be conformed to reflect any changes made as a result of his motion.

Wife sought the following in her motion: (1) recovery of her expert fees, (2) the award of the Pastureland, (3) that she be allowed to retain the full one-half interest in the Riveroak Parcel, (4) the award of two paintings owned by the parties, and (5) that the order be conformed to reflect any changes made as a result of her motion.

The family court denied the motions by order with the following clarifications: (1) Husband was to prepare the QDRO and (2) the order was not intended to preclude either party from seeking a modification or termination of alimony in the future. This appealed followed.

**ISSUES ON APPEAL**

1. Did the family court err in awarding $2,500 per month in permanent periodic alimony to Wife?

2. Did the family court err in failing to attempt an in-kind division of the marital real property?

3. Did the family court err in ordering that Wife deed to Husband a twenty-five percent interest in the Riveroak Parcel?

4. Did the family court err in determining the value of Husband's retirement accounts?

5.  Should the equitable division reached by the family court be reversed and remanded?

## STANDARD OF REVIEW

"[T]he proper standard of review in family court matters is de novo, rather than an abuse of discretion . . . ." *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018).  "[D]e novo review does not require the [appellate c]ourt to disregard the family court's factual findings because that court was in the best position to judge witness credibility." *Rudick v. Rudick*, 437 S.C. 270, 274, 878 S.E.2d 686, 688 (2022); *see also Lewis v. Lewis*, 392 S.C. 381, 388, 709 S.E.2d 650, 653 (2011) ("The tendency to affirm family court findings of fact may be traced to the two features noted above—the superior position of the trial judge to determine credibility and the appellant's burden to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court.").

## LAW AND ANALYSIS

### A. Alimony

Husband argues the family court erred by awarding Wife permanent periodic alimony of $2,500 per month.  Husband asserts Wife's financial declaration is inaccurate because Husband, not Wife, paid the mortgages for the Marital Home and the Pastureland.  Husband avers the family court's award placed Wife in a better position than she would have enjoyed during the marriage.

In the alternative, Husband argues that if Wife is to be awarded alimony, it should be for a term rather than permanent periodic alimony because Husband is required to retire from his current employment at age sixty-five.  In Husband's view, after his retirement, Wife will outearn him and any alimony payment will be made from his remaining interest in his retirement accounts.  Husband asserts he would be unable to seek modification of the alimony award in the future based upon his retirement because it was foreseen at the time of the order.  *See Butler v. Butler*, 385 S.C. 328, 336, 684 S.E.2d 191, 195 (Ct. App. 2009) ("Changes in circumstances must be substantial or material to justify modification or termination of an alimony award.  Moreover, the change in circumstances must be unanticipated.  'The party seeking modification has the burden to show by a preponderance of the evidence that the unforeseen change has occurred.'" (citations omitted) (quoting *Kelley v. Kelley*, 324 S.C. 481, 486, 477 S.E.2d 727, 729 (Ct.

App. 1996))). Husband therefore argues this court should order that Husband's alimony obligation ends when he turns sixty-five.

We hold the family court did not err in awarding Wife permanent periodic alimony of $2,500 per month. The family court carefully examined all the alimony factors as required by section 20-3-130(C). These factors included the income of the parties at the time of the hearing, with Husband earning $27,861.76 per month and Wife earning $9,480.45 per month, and their monthly expenses. During trial, Wife explained she included the mortgages of the Marital Home and Pastureland on her financial declaration because she was asking for the marital estate to be awarded to her. *See Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001) ("Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage."); *Smith v. Smith*, 425 S.C. 119, 132, 819 S.E.2d 769, 776 (Ct. App. 2018) ("If a claim for alimony is well-founded, the law favors the award of permanent periodic alimony. Rehabilitative alimony may be awarded only upon a showing of special circumstances justifying a departure from the normal preference for permanent periodic support." (quoting *Jenkins v. Jenkins*, 345 S.C. 88, 95, 545 S.E.2d 531, 535 (Ct. App. 2001))); *see also* § 20-3-130(C)(7) (providing that in awarding alimony, the court must consider "the current and reasonably anticipated expenses and needs of both spouses").[6]

We reject Husband's argument that he is precluded from seeking modification or termination of alimony when he retires. *See* S.C. Code Ann. § 20-3-170 (2014) ("Retirement by the supporting spouse is sufficient grounds to warrant a hearing, if so moved by a party, to evaluate whether there has been a change of circumstances for alimony."). An award of alimony cannot be based on speculation. *See Browder v. Browder*, 382 S.C. 512, 520, 675 S.E.2d 820, 824 (Ct. App. 2009) ("Any change in circumstances regarding Husband's retirement may warrant a modification of alimony when that event occurs; however, consideration of this anticipated but speculative occurrence at this time was inappropriate."); *Rimer v. Rimer*, 361 S.C. 521, 528, 605 S.E.2d 572, 576 (Ct. App. 2004) ("[W]hen the effect of anticipated changes is not readily ascertainable, it is inappropriate for the family court to speculate as to the effect of such anticipated changes."); *cf. Sharps v. Sharps*, 342 S.C. 71, 78, 535 S.E.2d 913, 917 (2000) ("As a general rule, a court hearing an application for a change in alimony should look not only to see if the substantial change was contemplated by the parties, but most importantly whether

---

[6] During trial, Husband testified he would agree to pay alimony for a period of time.

the amount of alimony in the original decree reflects the expectation of that future occurrence . . . [c]ases will exist where the termination of child support will occur so close in time to the decree setting alimony that the expected cessation of child support will be reflected in the alimony amount owed to a spouse."). While Husband anticipated retiring at sixty-five, determination of his future income would require the court to speculate. Further, in its order in response to the parties' motions to alter or amend, the family court clarified that in issuing its final order, "the court did not intend to preclude either party from seeking a modification and/or termination of alimony upon a proper showing of a substantial change in circumstances in the future." Thus, the family court's order does not preclude Husband from seeking modification or termination of alimony upon his retirement. Accordingly, we hold the family court did not err and we affirm the alimony award.

**B. In-Kind Distribution**

Husband argues the family court erred in ordering all of the real property owned by the parties to be sold (except for the Riveroak Parcel), rather than attempting an in-kind distribution. Husband relies on the law's preference for in-kind distribution and argues this would be simpler than the family court's current order.

Husband asserts he should be given the Marital Home and the Pastureland because of the importance of his horses to him and his way of life. Husband avers Wife's appraisal expert, Ken Watts, considered comparable houses, not comparable properties. Therefore, Husband believes the valuation of the Marital Home and Pastureland should be adjusted to a value more in line with that presented by his expert, Robin Duncan. In the alternative, Husband argues he should receive credit for the reduction in the principal of the mortgages and any home equity lines of credit from the date of filing.

Further, Husband argues that the rental property should be divided in kind and given to Wife, rather than sold. Additionally, Husband avers the Riveroak Parcel should also be subject to an in-kind distribution because it is impossible to deed half of Wife's interest to Husband and Husband's remaining entanglement with Wife and Dea Fallin, a person who caused friction in their marriage, would lead to an "unhappy" result.[7]

---

[7] We assume that Wife would not transfer her interest by deed, but rather by shares in the corporation, FallinUp, LLC.

We hold the family court did not err when it ordered the real property, except for Riveroak Parcel, to be sold rather than divided in kind. In-kind distribution is favored. *See* S.C. Code Ann. § 20-3-660 (2014) ("The court in making an equitable apportionment may order the public or private sale of all or any portion of the marital property upon terms it determines."); *see also Craig v. Craig*, 358 S.C. 548, 557-58, 595 S.E.2d 837, 842 (Ct. App. 2004) ("The court, however, should first attempt an 'in-kind' distribution of the marital assets."). However, here, the divorce proceedings were very hostile, and the Marital Home and adjoining Pastureland are adjacent to Wife's parents' home. Wife's parents testified they did not want to live next to Husband. Additionally, the parties did not agree on the value of the Marital Home and Pastureland, and neither Husband nor Wife expressed a desire to retain the rental property. Thus, we hold the family court did not err by ordering the Marital Home and Pastureland to be sold instead of dividing the properties in kind.

As to credit for the reduction of the principal of the mortgages and any home equity lines of credit from the date of filing, Husband failed to present any evidence at trial as to the amount of credit he should receive. Therefore, we hold this argument is unpreserved. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

Although the relationship between Husband and Dea Fallin is contentious, Husband did not name Dea Fallin nor FallinUp, LLC, as parties to the proceedings. *See Ex Parte South Carolina Dept. of Revenue*, 350 S.C. 404, 408, 566 S.E.2d 196, 198-99 (Ct. App. 2002) (holding the master in equity lacked personal jurisdiction over a nonparty and vacating an order binding the nonparty). Therefore, we hold the family court did not err in ordering Wife and Husband to split Wife's one-half interest in the Riveroak Parcel.

## C. Retirement Accounts

Husband challenges the family court's valuation of his Schwab accounts as not reflective of the value of the marital portion of those accounts. Husband asserts Wife's expert improperly valued these accounts at $1,769,405.92 by failing to credit Husband for any premarital portion or subsequent contribution.

We hold Husband failed to present sufficient evidence of any premarital contribution. *See Lewis v. Lewis*, 392 S.C. 381, 391, 709 S.E.2d 650, 655 (2011)

(noting the appellant has the burden "to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court").  The record contains no evidence that Husband made any premarital contributions to the pension plan.  Husband asserted he had invested $20,000 into one of the Schwab 401(k) accounts, but he provided no further evidence showing that an investment of this amount was in fact made, when it was made, or in which account it was invested.  Due to his lack of specificity regarding the retirement accounts and the lack of evidence of what, if any, premarital contributions he made, Husband is not entitled to any credit for any alleged premarital contributions to the accounts.  Furthermore, Husband argued this issue in a conclusory fashion and failed to cite any supporting authority.  Therefore, we hold this argument is abandoned.  *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001) (holding a conclusory argument made without supporting authority is deemed abandoned on appeal).

Additionally, Catherine Stoddard, a certified public accountant retained by Wife, testified there were no contributions made to the account ending in 0896 after the date of filing.  The only account that would be implicated by any contributions made after filing would be the Schwab account ending in 5193.[8]

Although we hold the family court was correct in determining that the marital portion of the defined benefit and defined contribution accounts should be equally divided, we understand Husband's concern that the order does not clearly define what is included in the marital portion.  Based on the evidence presented and the court's conclusion that the portion should be divided 50/50, we modify paragraph 32 of the family court's order as follows:

> Plaintiff shall be entitled to 50% of the marital portion (date of marriage through date of filing) of Defendant's retirement and pension accounts as of the date of filing, subject to any passive gains and/or losses. The accounts shall be split pursuant to a Qualified Domestic Relations Order (QDRO).  Defendant shall be responsible for having the QDRO prepared, and each party shall pay one-half (1/2) the cost of the preparation of the

---

[8] Catherine Stoddard analyzed Husband's Schwab account ending in 5193 and testified that she carved out any post-filing contributions and any gains or losses on those contributions.  Therefore, any post-filing contributions are accounted for in her calculation of the marital portion.

QDRO(s).  The parties will equally divide (50/50) the marital portion, calculated at 76.6%, of the CPRP pension.  The parties will divide the Schwab account ending in 0896 into an equal (50/50) division as there was no evidence presented of non-marital contributions.  For the Schwab account ending in 5193, the parties shall calculate the marital portion at the time the QDRO is prepared.  The parties may either agree to the marital percentage or, if they cannot agree, they shall divide equally the cost of Catherine Stoddard's updated calculation of the marital percentage.  Both parties shall sign any necessary documentation to accomplish the division of these accounts.

*See McNeill v. McNeill*, 288 S.C. 491, 492, 343 S.E.2d 626, 626-67 (1986) (modifying the family court's alimony award after a de novo review of the record).

**D. Equitable Distribution**

Finally, Husband argues that each of the above arguments requires this court to revisit the family court's order to effectuate the equal division (50/50) to which the parties agreed.

We hold this argument is abandoned because Husband makes conclusory statements and fails to cite any supporting authority in his appellate brief as to this issue.  *See Glasscock*, 348 S.C. at 81, 557 S.E.2d at 691 (holding a conclusory argument made without supporting authority is deemed abandoned on appeal).  Further, because we hold the family court did not err as to any of the other issues Husband raises on appeal, we need not address this issue.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating appellate courts need not address remaining issues when disposition of prior issue is dispositive).[9]

**CONCLUSION**

For the foregoing reasons, we affirm the family court's order as modified to include the language specified above.

---

[9] Husband expressly does not appeal the family court's award of attorney's fees to Wife.

**AFFIRMED AS MODIFIED.**

**KONDUROS, GEATHERS, and VINSON, JJ., concur.**